(C. D. 404)

Henri Bendel, Inc. *v.* United States

United States Customs Court, First Division

(Decided November 29, 1940)

*Brooks & Brooks* (*Ernest F. A. Place* and *Frederick W. Brooks* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

BROWN, Judge: This suit against the United States was brought at New York to recover customs duties claimed to be illegally exacted on certain hand-sewn ladies' shoes. Trial was had at that port and concluded before a specially constituted Division I, Judges Tilson and Kincheloe being assigned to participate with the writer in the decision of this case.

The collector of customs took duty at 30 per centum ad valorem under paragraph 1530 (e) of the Tariff Act of 1930 as amended by the Proclamation of the President published in T. D. 45311, 60 Treas. Dec. 1014, increasing the rate of duty—

expressly fixed in paragraph 1530 (e) of Title I of said act on boots and shoes, made wholly or in chief value of leather, not specially provided for, sewed or stitched by the process or method known as McKay, from 20 per centum ad valorem to 30 per centum ad valorem.

The portion of the statutory paragraph 1530 (e) which was amended by President Hoover by inserting therein the above new language had previously read as follows:

1530 (e). Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem; * * *

The plaintiff contends that the Presidential increase of duty was not intended to apply to the expensive hand-sewed shoes here involved but only to certain machine-made shoes by a method named after one Gordon McKay, the owner of the patent rights of one Lyman R. Blake who invented a shoe sewing machine in 1858, which machine McKay introduced as a practical method of sewing shoes by machine, and that consequently these shoes are only dutiable at 20 per centum ad valorem, the original statutory rate, as claimed in the protests.

There are other claims in the protests but they are not pressed.

The plaintiff placed upon the stand a number of thoroughly qualified witnesses whose testimony was not weakened on cross-examination, who very convincingly demonstrated that the McKay process or method is a machine sewing which took its name from the machine introduced into the shoe industry by Mr. McKay in 1858 or 1860.

They also point out in a detailed way the essential differences in construction between these expensive hand-made shoes and the much cheaper shoes made by the McKay process.

The encyclopedias cited and the trade publications called to the attention of the court support the view of the plaintiff's witnesses. For instance the New International Encyclopedia, Vol. 21, page 39 says:

In 1860 the McKay sewing machine, for sewing uppers and soles together, was introduced and at once revolutionized the business.

Again in Vol. 20, page 759, it says:

The McKay machine * * * exerted a tremendous effect on the shoe industry.

The Encyclopedia Britannica, Vol. 3, page 888 under the heading "Machinery in the United States" says:

There are, in America, six manufacturing methods, standard screw, McKay sewed, Goodyear welt, Goodyear turned, littleway and stitchdown, utilizing various types of machines.

The Shoe and Leather Lexicon, published by the Boot and Shoe Recorder Publishing Co. of New York City, described the McKay-sewed shoe as a method of shoe making named for the inventor of the McKay machine, being one of the first stitching machines used and states that:

The lasting tacks and a line of stitching appear inside. It is the method ve generally employed in making popular priced * * * shoes.

The publication of the United Shoe Machinery Corp. of Boston, entitled "How Modern Shoes are Made" at p. 25, chapter IV, under the heading "The McKay Sewed Shoe", describes the machine invented by Lyman R. Blake in 1858, which afterwards became known as the McKay Sewing Machine and which introduced this process as a practical method for making shoes. This work points out characteristics which do not belong to the kind of hand-made shoes we have before us.

The two Government witnesses testified to the contrary, but their testimony is unconvincing.

There can be little doubt, upon the weight of the evidence in this record, that the shoes sewed or stitched by the process known as McKay are machine-made shoes, and that the Presidential proclamation did not intend to raise the duty upon expensive hand-made shoes of the character of those before us. We so hold.

Judgment will therefore issue sustaining the claim for classification at 20 per centum ad valorem of the items in contest and overruling the protests in other respects.